# Case No. 2,799.

## In re CLARK.

[5 Ben. 389;[1] 6 N. B. R. 197.]

District Court, S. D. New York. Nov. 16, 1871.

AUDITING ASSIGNEE'S ACCOUNT—SECOND MEETING.

1. At the second meeting of creditors, the assignee must present his accounts, in accordance with section 27 of the bankruptcy act [of 1867 (14 Stat. 529)]. Such accounts it is the duty of the register to audit, under section 4 of the act and general order No. 5. Creditors must be prepared then to object to such accounts.

2. The provision, in section 28, for the passing of the final accounts of the assignee, does not imply that accounts presented by him at the second meeting of creditors shall not be then audited by the register.

In bankruptcy.

[On certificate of I. T. Williams, Register:]

[2][I, the undersigned register in charge of this case, do hereby certify that I was, on

[1] [Reported by Robert D. Benedict, Esq., and here reprinted by permission.]

[2] [From 6 N. B. R. 197.]

the thirty-first day of October last, served with a paper requesting me, among other things, to audit and pass certain accounts filed with me at an adjourned second meeting of creditors of said separate estate, held on the ninth day of October, eighteen hundred and seventy-one, and direct the payment of such of the outstanding claims as were not objected to. The said paper recites that the period of ten days had elapsed since the accounts were so filed, and that no creditor had objected to said accounts, nor to any of said outstanding claims, and that there had been filed with me consents of several creditors to the payment of said claims.

[And I further certify that the said second meeting was so as aforesaid held after several adjournments, and that but one of the creditors of said estate attended this second meeting, to wit, Mr. Mortimore Addoms; that the accounts aforesaid were filed on that day, and a dividend declared of ten per cent. upon the claims proved; that at the close of the meeting checks were drawn and countersigned for the payment of all said dividends; that the claims against the said assignee by his attorneys amounted to the sum of five thousand one hundred and eighty-nine dollars and nine cents; that believing the said assignee and his said attorneys all perfectly responsible for any overpayment that might be made, I determined to countersign checks for the payment of said claims of said attorneys upon receiving from them an affidavit that the services so charged for had in fact been rendered, and that they were fit and proper services, and that the sum charged therefor was reasonable and proper, and thereupon drafted such an affidavit for that purpose; that said attorneys refused to swear to the same, all of which proceedings will appear from the certified copy memorandum of said day and filed with the clerk of this court; that on the twelfth day of October aforesaid, I received a notification from said attorneys, addressed to the said assignee and myself, which is herewith submitted. Whereupon, on the same day, I wrote a note to the said assignee, in reply to which I received, on the fourteenth day of October aforesaid, a letter from the said assignee; also a letter from his said attorneys, both of which are herewith submitted. Unwilling to have any unfavorable consequences follow upon my omission to countersign checks for the payment of the said claims of said attorneys, I determined, as I deemed the said assignee as well as his attorneys perfectly responsible, to countersign the said checks in case the said assignee—with full knowledge of the fact that I believed the law to be such, that the said claims of said attorneys would be open to be objected to by the creditors at the final meeting in case they or any of them should elect so to object—desired me to do so. I thereupon, on the sixteenth of October aforesaid, wrote him a note, in reply to

which I received on the seventeenth of October a letter, which is herewith submitted. That on the same day I received a paper from several of the creditors protesting against the said bill of said attorneys; and having received from the said attorneys a note in which they say, "Under your extraordinary ruling that even the register's own check is no protection to an assignee on a final accounting, we should not permit him to pay us any money even if you ordered him to do so," no further steps in that direction have yet been taken.

[And now, touching my duty to "audit and pass the said accounts prior to the final meeting of creditors, I have been desirous to do so if it could be legally done. The difficulties that present themselves to my mind are as follows: The fourth section provides that the register "shall audit and pass accounts of the assignee." Section twenty-eight provides that "preparatory to the final dividend the assignee shall submit his account to the court and file the same, and give notice to the creditors of such filing, and shall also give notice that he will apply for a settlement of his accounts and for a discharge from all liability as assignee, at a time to be specified in such notice; and at such time the court shall audit and pass the accounts of the assignee," &c. I find nothing in the act or general orders to modify or change this provision. It seems to be imperative as to time and manner. The creditors are relieved from objecting at any other time or under any other circumstances, and if so relieved, they cannot be bound to object at any prior time, or forever after hold their peace.

[The request to direct payment of such of the said outstanding claims as were not objected to, would seem to imply a duty on the part of the creditors to object at such second meeting or be precluded of all objection thereafter. But that meeting was called under the provisions of section twenty-seven, and no notice was given to creditors that the assignee would file his accounts and apply for a settlement of the same as required by section twenty-eight. It cannot possibly be said, therefore, even if the register have power to audit and pass the accounts at any save at a final meeting, that he has power to audit and pass them at a meeting at which no notice to that effect was given to creditors. The attempt therefore to bind the creditors thus without notice ought not to be urged upon the court. The assignee ought not to be heard to object that the court may not, at the final meeting, allow him for sums paid as counsel fees. This would be to impugn the honor and integrity of the court. The presumption at least is that the court, as well as all officers of the law, will do its duty.

[I have usually, in similar cases, attempted to protect the assignee as well as the fund, when paying claims against the es-

tate, by taking an affidavit of the justness of the claim before countersigning the checks. This would perhaps throw the burden of proof upon the creditor objecting at the final meeting, and require of him something that would be in the nature of a surcharging or falsifying of the claim. Had the attorneys in this case been able to swear to the affidavit as required, it is scarcely probable that the creditors would at the final meeting take upon themselves the burden of surcharging or falsifying their claim; certainly not unless they thought the claim grossly unjust. All of which is respectfully submitted.] [2]

BLATCHFORD, District Judge. Inasmuch as the register has, by section 4 of the act and general order No. 5, the general power to audit and pass the accounts of assignees, and, by section 27, it is provided, that, at the second general meeting of creditors, the assignee must report and exhibit to the court and to the creditors just and true accounts of all his receipts and payments, verified by his oath, and produce and file vouchers for all payments for which vouchers are required by any rule of the court, I think that the register has power, and that it is his duty, to audit any accounts so reported and exhibited. Section 27 requires the assignee to exhibit at the same time a schedule of creditors and property, and a statement of the whole estate, as then ascertained, and of property recovered and property outstanding, and debts or claims undetermined. and moneys remaining in hand, and then and there the creditors, by a majority in value, are to determine what net sum shall be divided, retaining a sum sufficient to provide for undetermined claims not proved, and for other expenses and contingencies. The creditors are to have notice of this meeting, and must, therefore, be prepared to object, if they desire, to such accounts as the assignee shall then report and exhibit, under section 27. In order to arrive at the net sum to be divided. the outstanding claims, not disputed or objected to, must be arrived at, and their amount deducted. If they are not disputed or objected to, and appear to be proper charges, it is the duty of the register to direct their payment, as part of the business of auditing and passing the accounts even though they have not been actually paid by the assignee. They may properly come under the head of "other expenses," the amount of which is to be retained by the assignee, such retention being specifically authorized by the meeting and the register, to meet the specific items, as such expenses.

The provision in section 28, for auditing and passing the accounts of the assignee at the meeting for the final dividend, cannot be regarded as in any manner implying that

such accounts of the assignee as are presented at the second general meeting of creditors shall not then be audited and passed by the register.